UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SALLY A. DICKINSON,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

Case No. C17-5463 TSZ

**ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff Sally A. Dickinson seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred in evaluating her testimony and the opinions of several doctors. Dkt. 9. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Ms. Dickinson is currently 43 years old, has a limited education, and has worked as a janitor. Tr. 30-31. On September 17, 2013, she applied for benefits, alleging disability as of February 1, 2013. Tr. 16. Her applications were denied initially and on reconsideration. *Id*. After the ALJ conducted a hearing on December 15, 2015, the ALJ issued a decision finding Ms. Dickinson not disabled. Tr. 16-32.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Dickinson has not engaged in substantial gainful activity since the alleged onset date of February 1, 2013.

**Step two:** She has the following severe impairments: obesity, status post right shoulder Superior Labrum Anterior and Posterior (SLAP) tear and surgical repair, degenerative disc disease, asthma, arthritis, depression, panic disorder, and post-traumatic stress disorder (PTSD).

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** She can perform light work, including lift/carry 20 pounds occasionally and 10 pounds frequently, and sit/stand/walk 6 hours a day. Her right arm is limited to pushing/pulling frequently and reaching overhead occasionally. She can frequently climb ramps/stairs, but never ladders/scaffolds. She can balance, stoop, kneel, crouch, and crawl frequently. She is precluded from working around hazards, concentrated exposure to airborne irritants, extreme cold, and vibrations. She is limited to simple, routine, repetitive tasks and simple work-related decisions. She can interact with coworkers occasionally, and the public only incidentally such as passing people in hallways.

**Step four:** She cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that she can perform, Ms. Dickinson is not disabled.

Tr. 18-32. The Appeals Council denied her request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

## DISCUSSION

**A.    Ms. Dickinson's Testimony**

Where, as here, the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged'" and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons'" supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). The ALJ found Ms. Dickinson's testimony less than fully credible on the grounds that the severity of her symptoms was "not entirely supported by the record as a whole" and there was "some noncompliance with medication and treatment methods." Tr. 23. The only evidence the ALJ provided to support his reasoning is that in a December 2013 follow-up visit five months after shoulder surgery, "Anita Rao, M.D., noted a primarily normal physical examination, and attributed the claimant's perception of her pain to be exacerbated by her anxiety symptoms, to which the claimant agreed. Dr. Rao indicated it was 'a somatization of sorts.'" Tr. 23 (quoting Tr. 444). The implication seems to be that if Ms. Dickinson followed her mental health treatment recommendations, her perceived pain would diminish. That does not, however, undermine her testimony regarding her perceived pain. Ms. Dickinson is not less credible because her physical and mental conditions interact. Moreover, the finding of noncompliance is not supported by substantial evidence, because the ALJ did not expressly point to any evidence in support. The only references in the ALJ's decision that arguably show noncompliance are two treatment notes from December 2014 and July 2015 that Ms. Dickinson reported she had stopped taking her medications because of side effects. Tr. 28, 29. In several years of treatment, these two instances are of little import, and are moreover explained by side effects of reflux and an

increase in anxiety. *Id.* Dr. Rao also noted several abnormal physical findings, which further undermines these grounds for discounting Ms. Dickinson's testimony. *See* Tr. 444 (pain, tenderness, less than full motion, "internal rotation to about T10").

The ALJ's brief explanation is followed by a lengthy summary of several years of treatment records, but the relevance to Ms. Dickinson's testimony is not stated. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ did not identify what portions of Ms. Dickinson's testimony were not credible and what evidence undermined it.

The Commissioner argues that the ALJ's summary of the medical record shows that objective medical evidence does not support Ms. Dickinson's allegations. Dkt. 10 at 11. With regard to mental health, the cited records largely consist of brief screenings in the context of medical appointments to address physical problems. *See*, *e.g.*, Tr. 501, 533. The full mental status examinations show a mixture of normal and abnormal results, not consistently normal findings that would discredit Ms. Dickinson's testimony. *See* Tr. 433-34 (impaired recent memory, impaired calculations and serial sevens, depression signs, rambling speech needing redirection). Similarly, physical examination results are mixed. The Commissioner concedes that "the record admittedly contains a combination of positive and negative clinical findings and diagnostic imaging results," but argues that the ALJ is the final arbiter in resolving ambiguities in medical evidence. Dkt. 10 at 13 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). While that is correct, here the ALJ did not resolve ambiguities. He merely summarized treatment notes, leaving the ambiguities unresolved. The Court may not make its own independent findings in determining whether the ALJ's findings are supported by substantial

evidence. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court cannot affirm the ALJ's discounting of Ms. Dickinson's testimony on this ground.

The Commissioner further argues that the ALJ found that Ms. Dickinson's conditions improved with treatment. Dkt. 10 at 10. The ALJ did not articulate this reason as grounds to reject Ms. Dickinson's testimony, or identify facts supporting this reason. The Commissioner's argument is thus an improper post-hoc rationalization this Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995). Moreover, improvement, without any point of reference, does not show a return to full capacity or the ability to work and does not undermine Ms. Dickinson's testimony regarding her current condition. *See*, *e.g.*, Tr. 593 ("good medication response"), 612 (neck "better").

The Court concludes the ALJ erred in discounting Ms. Dickinson's testimony.

**B.     Medical Opinions**

Ms. Dickinson contends the ALJ erred in discounting the opinions of three treating and examining medical sources, and in relying on the opinions of three nonexamining medical sources. An ALJ may reject a physician's contradicted opinion by providing "specific and legitimate reasons" supported by substantial evidence. *Garrison*, 759 F.3d at 1012.

**1.     Examining Source William U. Weiss, Ph.D.**

Ms. Dickinson contends the ALJ erred in rejecting Dr. Weiss' opinion that she was unable to work at present on the grounds that "he appeared to rely primarily upon the claimant's subjective statements regarding the severity of her anxiety/depression specifically." Tr. 26.

An ALJ may discount a medical source's opinion that is based to a large extent on a claimant's properly discredited self-reports; however, when an opinion is not more heavily based on self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). And an ALJ does not provide clear and convincing reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the ultimate opinion with his own observations. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). Additionally, "psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). For this reason, the Court in *Buck* noted "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.*

Here, the ALJ did not properly discredit Ms. Dickinson's testimony, as discussed above. On remand, a reevaluation of her testimony may lead to a different evaluation of the medical evidence that relied in part on her self-reports. Furthermore, Dr. Weiss did not discredit Ms. Dickinson's complaints or find she was exaggerating her symptoms. He of course noted what she told him. But his opinion on her depression and anxiety was not just a recounting of her symptoms. Rather, the doctor performed a clinical evaluation including a mental status examination. He made personal observations regarding her appearance, facial expressions, affect, and manner while responding, and reviewed clinical records from other providers. Tr. 432-35. The record thus does not support a finding that Dr. Weiss merely relied on Ms.

Dickinson's statements but instead shows he reached his opinions following a professional mental health evaluation. The record does not establish he deviated from standard professional norms in assessing her. The ALJ therefore erred in rejecting the doctor's opinions on the grounds he relied primarily upon Ms. Dickinson's statements.

### 2. Treating Source Paul Kihun Won, M.D.

In a May 6, 2014, office visit, Dr. Won concluded "Patient is put on permanent modified work restrictions; lift carry push pull no more than 10 lbs, intermittent use of right hand, intermittent reach above right shoulder level." Tr. 460. The ALJ rejected this portion of Dr. Won's opinion on the grounds that "his functional limitations are slightly more restrictive than later evidence in the record shows." Tr. 28. The ALJ fails to identify what later evidence undermines Dr. Won's opinion. The Commissioner argues that the ALJ's ensuing summary of later treatment notes shows "unremarkable" findings. Dkt. 10 at 5. But the ALJ's summary recounts a mixture of normal and abnormal clinical findings, with no attempt at resolving the ambiguities. The Court cannot make its own findings. *See Connett*, 340 F.3d at 874. Because the ALJ failed to identify what evidence undermines Dr. Won's opinion and in what way, the Court concludes the ALJ erred in rejecting Dr. Won's opinion.

### 3. Examining Source Donald Tilson, Jr., M.D.

The ALJ did not explicitly address Dr. Tilson's opinion. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. The Commissioner argues the error is harmless because "the opinion was essentially duplicative of Dr. Won's opinion." Dkt. 10 at 6. Because the ALJ erred in rejecting Dr. Won's opinion, this argument fails. On remand the ALJ should also address Dr. Tilson's opinion.

### 4. Nonexamining State Agency Consultants

Ms. Dickinson contends the ALJ erred in giving too much weight to the opinions of the state agency consultants Kent Reade, Ph.D., Matthew Comrie, Psy.D., and Robert Hoskins, M.D. Dkt. 9 at 14-15. The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining doctor. *Pitzer v. Sullivan*, 908 F.2d 502, 506, n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Because the ALJ erred in rejecting the opinions of treating and examining doctors as discussed above, the Court cannot affirm the ALJ based upon the nonexamining source opinions.

## C. Residual Functional Capacity

The Commissioner argues that the Court should affirm the ALJ's determination of Ms. Dickinson's physical RFC because it is supported by treating physician Dr. Rao's notes that she had "reached maximum medical improvement" and had "excellent motion with near full and symmetric motion." Tr. 30; *see also* Dkt. 10 at 7-8. These are findings; Dr. Rao did not provide a functional capacity assessment based on her findings. The findings indicate that Ms. Dickinson can expect no further improvement, including from any further surgery, but do not address what capabilities she retains. And nearly full motion does not indicate, for example, how much she can lift. For an ALJ to develop an RFC based on medical findings, the ALJ must set forth his interpretation of the findings and why his interpretation is correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (An "ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") The ALJ offers no interpretation here, and no explanation for why his translation of Dr. Rao's notes into a functional capacity assessment is correct. The Court cannot affirm on these grounds.

The ALJ supported the mental RFC on the grounds that Dr. Weiss opined that "'with psychotherapy and psychotropic medication in combination, her psychological problems may be sufficiently ameliorated for her to return to gainful employment.'" Tr. 30 (quoting Tr. 436). Dr. Weiss' conclusions as to future improvement were qualified, uncertain, and somewhat speculative. While he stated that she "may" be able to return to work if therapy and medication were successful, he also opined that "[h]er problems are likely to be long-term. Prognosis is fair." Tr. 436. The ALJ did not address the equivocal statements in Dr. Weiss' prognosis. With these ambiguities unresolved, Dr. Weiss' speculative and provisional opinion on Ms. Dickinson's future employability does not constitute substantial evidence to support the ALJ's RFC determination.

**D.     Scope of Remand**

Ms. Dickinson argues the Court should remand for an award of benefits. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 9

Here, the Court finds that not all essential factual issues have been resolved. There are extensive unresolved conflicts in the medical evidence in the record and the record, as it stands, does not compel a finding of disability. Dr. Weiss did not translate his mental status examination results into specific mental limitations or remaining capacities, either at present or in the future if therapy and medications are able to improve Ms. Dickinson's conditions significantly. And even if Dr. Won's physical limitations are fully incorporated into the RFC, there is no evidence in the record to establish whether or not there are significant numbers of jobs Ms. Dickinson could perform. Accordingly, remand for further proceedings is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should evaluate Ms. Dickinson's testimony and the opinions of Dr. Weiss, Dr. Won, and Dr. Tilson. The ALJ should reassess the RFC as appropriate, and proceed to step five as appropriate.

DATED this 30th day of May, 2018.

Thomas S. Zilly
United States District Judge